IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John Thomas Robinson, #256452 | ) | |
| | ) | Civil Action No. 8:08-731-RBH-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| R. Beardon, Jr., M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, alleges his constitutional rights have been violated pursuant to 42 U.S.C.§ 1983.  This matter is before the Court on the defendant's motion for summary judgment  (Dkt. Entry # 17); and the plaintiff's motions for summary judgment (Dkt. Entry # 25) and for a preliminary injunction (Dkt. Entry # 15).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on February 28, 2008, seeking damages for alleged civil rights violations.[1]  On May 19, 2008, the defendant filed a motion for summary

---

[1] The undersigned notes the complaint was signed by the plaintiff on February 27, 2008, (Compl. at 5) and postmarked on February 29, 2008.  (Pet. Attach. 6.)  Additionally, a stamp on the envelope reflects that the complaint was received on February 28, 2008, but it is not clear by whom. Assuming it was received by the prison mailroom, the undersigned has used February 28, 2008, as the filing date.  *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).  In any event, the determination of the filing date as either the 27th or 28th will not alter the disposition of this action.

judgment.  By order filed May 20, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309

(4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and

the possible consequences if he failed to adequately respond to the motion.  On June 5,

2008, the plaintiff filed a response opposing the defendant's summary judgment motion.

Then, on June 27, 2008, the plaintiff filed his own motion for summary judgment.  (Dkt.

Entry # 25.)

## FACTS PRESENTED

The plaintiff is a state inmate currently being housed at Tyger River Correctional

Institution.  At the time he filed this complaint, he was in Livesay Correctional Institution B

Camp (formerly Northside Correctional Institution).  In his complaint, the plaintiff alleges that

in mid-January 2007,  he injured his back while working in the prison laundry.  He states

that he had ibuprofen which he took and he asked the officer to call medical.  He saw the

doctor the following day and told him that he had injured his back and had been taking

ibuprofen which "alleviate[d] the pain very well."  (Compl. at 3.)  He states that the doctor

told him to continue with the ibuprofen as it seemed to be working.

The plaintiff alleges the pain worsened from February until April 2007 and the

ibuprofen was less effective. He states that in May and June 2007, he "suffered

substantially" and he had severe pain in his right lower back to his calf in his right leg.  He

states he returned to Dr. Bearden and Dr. Bearden scheduled x-rays and arranged for an

examination by another doctor.  (Compl. at 3.)   However, the plaintiff alleges none of the

treatments fixed his leg and the medications prescribed by Dr. Bearden, phenylesic and

2

naproxen, alleviated his pain.  He states he hurt continuously.   He alleges that on February

19, 2008, Dr. Bearden told him that there was nothing else he could do for the plaintiff.

(Compl. at 4.)   The plaintiff states that he "asked Dr. Bearden to send [him] to another

specialist because [he] knew something other than arthritis is causing the pains [he is]

having." (*Id.*)  He alleges that Dr. Bearden told him that if he wanted any further medical

attention, he would have to pay for it himself.  He alleges that he left Dr. Bearden's office

and filled out a grievance and starting preparing this lawsuit.

The plaintiff alleges that he has great difficulty walking or standing and he has been

using a cane for six months.  He states that he wants his leg fixed and he knows that "it can

be fixed medically."  The plaintiff also alleges that he would have been granted parole on

June 20, 2007, if he had been able to continue working and earning work credits. (Compl.

at 4 ; Pl.'s Mem. Opp. Summ. J. Mot. ¶ 8.)  The plaintiff is seeking an order requiring the

defendant to provide him with adequate medical care with a specialist and damages.

(Compl. at 5.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

3

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**Exhaustion**

The defendants contend that the plaintiff has failed to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

5

Furthermore, exhaustion is a prerequisite to suit that must be completed *prior* to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005)(emphasis added). *Cabbagestalk v. Ozmint*, 2007 WL 2822927 (D.S.C. 2007). *See also Neal v. Goord,* 267 F.3d 116, 123 (2nd Cir. 2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in

6

writing no later than forty days from the filing of the initial grievance.  If the inmate is not satisfied with the Warden's response, he must  file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden.  A responsible official has sixty days to respond to the Step 2 grievance.  The decision of the official who answers Step 2 is considered the SCDC's final response in the matter.  Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983.  42 U.S.C. § 1997e.

Here, the plaintiff filed a Step One grievance on February 25, 2008, regarding his medical indifference claim.  (Dkt. # 12 - Pl.'s Mot. to Compel Attach. # 2.)[2]   Three days later, he filed this § 1983 action.  (*Id.*)   The defendant responded on April 22, 2008.  (*Id.*) However, because the plaintiff filed this action on February 28, 2007, before the defendant responded to even his Step One grievance and before the time for the defendant to respond had passed, this claim was not exhausted.  Further, as noted above, a prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation.  Exhaustion is a prerequisite to suit that must be completed *prior* to filing an action.  *Anderson,* 407 F.3d at 677.

---

[2]The undersigned notes that there is also a request to staff form dated February 27, 2008, attached to the complaint.  (Compl. Ex. 5.)  However, it is unsigned and does not have a stamp reflecting that it was ever received by the defendant. In any event, for the same reasons that the plaintiff could not rely on his grievance dated February 25, 2008, to show exhaustion on his medical indifference claim, he also could not rely on this grievance as it was dated one day before he filed this action.

Accordingly, based on the evidence in the record, the plaintiff did not exhaust all of his administrative remedies *prior* to filing this action. Therefore, it is recommended that this action be dismissed. Alternatively, the undersigned recommends this action be dismissed for failing to state a claim as discussed below.

**Medical Indifference Claim**

The defendant also contends that the plaintiff has failed to state a claim of medical indifference. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier,* the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff

8

may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga.1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975).

The plaintiff's medical records show that he has been treated by for his back and leg problems. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A - Pl.;s Med. Records; Pl.'s Mem. Supp. Summ. J. Mot. Ex. A - Medical Records.) On July 31, 2007, the defendant referred the plaintiff to an orthopedist (*Id.* at 7.) On September 19, 2007, the plaintiff was seen by the orthopedist who gave the plaintiff a cane and ordered an MRI. (*Id.* at 6.) On October 22, 2007, after reviewing the MRI results, the orthopedist referred the plaintiff to a neurosurgeon for an evaluation. (*Id.*)

9

On November 5. 2007, the plaintiff was seen by a neurosurgeon. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A - Pl.;s Med. Records at 5; Pl.'s Mem. Supp. Summ. J. Mot. Ex. A - Medical Records. at 5.)   The neurosurgeon ordered a myelogram CT scan which was scheduled for November 16, 2007. (*Id.*) The plaintiff had a follow-up appointment with the neurosurgeon on December 4, 2007, to discuss the results of the CT scan. (*Id.* at 4.)   The neurosurgeon diagnosed the plaintiff with "mild moderate lumbar spondylosis without significant pain" and concluded that "[h]e definitely does not need surgery." (*Id.*)  The neurosurgeon recommended that epidural steroid injections be considered and on January 7, 2008, the plaintiff received an epidural steroid injection. (*Id.* at 3.)  The plaintiff reported no improvement. (*Id.* at 2.)

The defendant has referred the plaintiff to two specialists and they have not recommended further or different treatment or that he see another specialist.  He has undergone an MRI and  a Ct scan and received epidural steroid injections and the doctors who have treated him have determined that his condition does not warrant surgery.  Despite this, the plaintiff's alleges that the defendant has been deliberately indifferent by not referring him to an additional specialist.   However, the plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment.

At most, the plaintiff's complaint sounds of medical negligence, which is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851 (holding for plaintiff to succeed on medical indifference claim, treatment "must be so grossly incompetent, inadequate or

excessive as to shock the conscience or to be intolerable to fundamental fairness . . . mere negligence or malpractice does not violate the Eighth Amendment .") Accordingly, the plaintiff has failed to state a §1983 claim for medical indifference against the defendant.[3]

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendant's Motion for Summary Judgment (Dkt. # 17) be GRANTED; and the Plaintiff's Motion for Summary Judgment (Dkt. # 25) be DENIED and the claims DISMISSED.

IT IS FURTHER RECOMMENDED, if the District Court adopts this report, that the Plaintiff's Motion for a Preliminary Injunction (Dkt. # 15) be DENIED as moot.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

October 1, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[3]To the extent that the plaintiff's complaint states additional claims regarding his loss of his inability to earn work credits and thus his parole has been delayed, it is recommended these claims be dismissed. First, the only defendant in this action, Dr. Bearden, would not be a proper defendant as to such claims and, furthermore, such claims would not be proper in a § 1983 action.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).